IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

Roanoke Division

WILLIAM R. COUCH, #1128941,

    Plaintiff,

v.                                                              CIVIL ACTION NO. 7:09-cv-00434

JOHN JABE, et al.,

    Defendants.

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    COME NOW Defendants Jabe, Braxton, Garman, Swisher and Ryder, by counsel, and in support of their Motion for Summary Judgment and, additionally, in response to the Plaintiff's Motion for Summary Judgment, respectfully state as follows:

    1.    This 42 U.S.C. § 1983 proceeding is prosecuted pro se by Virginia Department of Corrections ("VDOC") inmate William R. Couch, #1128941 ("Couch"), currently incarcerated at the Augusta Correctional Center ("Augusta"). Couch complains that Operating Procedure ("OP") 803.2 is overbroad in its definition of sexual content and violates his First Amendment rights to purchase or possess publications such as Ulysses and Lady Chatterley's Lover. He further complains that his constitutional rights were violated when officials refused to allow him to receive a free gift book (Protecting Your Health and Safety) from a VDOC vendor.

    2.    All of your Defendants are sued in their official and individual capacities for acts alleged to have been done under color of state law. Neither a state nor its officials acting in their official capacities are "persons" under § 1983. Therefore, insofar as these Defendants are sued

in their official capacities, they are immune from suit in this matter. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

3.   It appears that Couch is seeking only injunctive relief. However, to the extent that Couch may be seeking damages for the application of an allegedly unconstitutional policy against him, Defendants submit that he has suffered no compensable injury. Couch has certainly not alleged any physical injury, and any injury at all that he may be inferring would have to be mental or emotional injury caused by his not being able to read the books he desires. The Prison Litigation Reform Act ("PLRA") provides that no action may be brought for mental or emotional injuries suffered while in custody without a prior showing of physical injury. See 42 U.S.C. § 1997e(e).

4.   Defendants submit as Exhibit I the affidavit of Correctional Officer Ryder, as Exhibit II the affidavit of Operations Officer Swisher, as Exhibit III the affidavit of Warden Braxton, as Exhibit IV the affidavit of Regional Director Garman, as Exhibit V the affidavit of Deputy Director Jabe, and as Exhibit VI the affidavit of VDOC Director Gene Johnson. Your Defendants respectfully request the Court to consider these affidavits as evidence in support of their Motion.

5.   With regard to Couch's complaint that he was not allowed to receive the book, Protecting Your Health and Safety, which was sent to him free of charge, C/O Ryder states in his affidavit, Exhibit I, that OP 803.2 provides for the efficient, safe, and secure handling and processing of incoming publications for inmates. A copy of that Operating Procedure is attached to Exhibit III. The policy permits inmates to subscribe to or order from legitimate mail order sources so long as those sources do not pose a threat to the security, discipline, and good order of the facility. Prior to ordering or subscribing to publications, an inmate must secure permission

from the Facility Unit Head by submitting a Personal Property Request Form. All publications are prepaid from the inmate's account. Inmates are not permitted to receive publications of any kind on a trial basis, or those which have not been preapproved and prepaid. Publications which may be obtained free of charge will be considered prepaid if the offender provides documentation that the publication is free when requesting approval to order the publication. Any publications not ordered or received in accordance with this procedure will not be delivered to the inmate and will be returned to the sender.

6. Defendant Ryder states that on January 28, 2009, the book Protecting Your Health and Safety was received in Augusta's property department and addressed to Couch. As there was no record that Couch had ordered or requested this book, as is required by OP 803.2, Couch was given the option to have the book placed on Visitor pickup. The book was not picked up and therefore was destroyed on June 18, 2009. Couch was notified of the confiscation.

7. Warden Braxton states in his affidavit, Exhibit III, that he dealt with the grievance that Couch submitted regarding this issue. In the grievance, Couch asked that OP 803.2 be revised to permit receipt of free books from an approved Vendor without the prison's prior approval or authorization. The grievance was responded to on February 26, 2009, by Assistant Warden Hollar. Couch was advised of the procedure and Hollar indicated that the procedure set forth the VDOC's position on the matter.

8. Regulations affecting the sending of mail to prisoners are essentially concerned with the maintenance of prison order and security and are, therefore, measured under the reasonableness test of Turner v. Safley, 482 U.S. 78 (1987). Such regulations are valid if reasonably related to legitimate penological interests, giving prison officials considerable deference in regulating the delicate balance between prison order and demands of "outsiders"

who seek to enter the prison environment. Id. at 404-07. A rule restricting the receipt of books to those sent directly from the publisher does not violate a prisoner's First Amendment rights. Bell v. Wolfish, 441 U.S. 520, 550-51 (1979). See also Zaczek v. Hutto, 642 F.2d 74, 75 (4th Cir. 1981). Restrictions on the receipt of outside reading material are constitutionally valid where the prison has a legitimate interest in preventing use of publications to smuggle contraband. See Hause v. Vaught, 993 F.2d 1079, 1083-84 (4th Cir. 1993). Defendants submit that the free publication that Couch wants was not denied him because of its content, but because Couch refused to follow the procedure, which procedure is based in security concerns. While the book was apparently being sent by a publisher approved by the VDOC as a vendor, it was not a book that Couch had ordered and paid for. The fact that it was free is no impediment to Couch receiving it. The policy provides that Couch simply must obtain preapproval of a free book offered him. His complaint in this regard simply does not state a claim of a constitutional violation and must be dismissed.

9. Couch's primary issue addressed in his Complaint concerns the alleged overbreadth of OP 803.2. In this regard, Couch states that his constitutional rights were violated when Augusta purged the books Ulysses and Lady Chatterley's Lover from the prison library and when he was prohibited from purchasing or possessing either of these publications. This issue is discussed in the affidavits of Defendants Swisher, Braxton, Garman and Jabe, as well as VDOC Director Johnson, who is not a Defendant.

10. Operations Officer Swisher states in her affidavit, Exhibit II, that OP 803.2 requires that a publication should be disapproved for receipt or possession by inmates if it contains explicit or graphic depictions or descriptions of sexual acts, including, but not limited to actual sexual intercourse, normal or perverted, anal or oral. On January 27, 2009, Couch

4

requested the book Ulysses, noting that it was not on the Disapproved Publications List, but advising Swisher that the book contained a passage that one may interpret to violate OP 803.2. On January 28, 2009, Swisher responded to Couch's request and advised him that she would have to review the publication in its entirety, and if the book was disapproved at the institutional level, it would be forwarded to the Publication Review Committee ("PRC") for a final decision.

11. Swisher goes on to state that on March 5, 2009, she issued a memorandum to the library staff advising them that Ulysses had been reviewed and it was determined that it was in violation of OP 803.2, and, that it would be forwarded to the PRC for its final determination. On May 7, 2009, the library was notified that Ulysses had been reviewed by the PRC and that the book had been disapproved due to a violation of OP 803.2.

12. On April 20, 2009, Couch stated that he was preparing to challenge OP 803.2 as being unconstitutionally overbroad because he found that Lady Chatterley's Lover, another book in the library, had passages that made "Ulysses look like Dr. Seuss." As a result, Lady Chatterley's Lover was reviewed and removed from the library and it was forwarded to the PRC for review and final determination as to whether it violated OP 803.2. Ultimately, on April 24, 2009, the PRC reviewed Lady Chatterley's Lover and determined that it violated OP 803.2. All final decisions to approve or disapprove publications rest with the PRC.

13. It is significant that both Ulysses and Lady Chatterley's Lover were pulled from Augusta's library and forwarded to the PRC for review after Couch had raised the issue with Defendants Swisher that may possibly violate OP 803.2. Swisher was not responsible for making the final decision as to whether those books should be approved or disapproved, but she simply followed the procedure by making an initial review and forwarding them to the PRC for

the ultimate determination. It is also significant that neither the PRC nor its members are Defendants in this case.

14. Warden Braxton states in his affidavit, Exhibit III, that the grievance process undertaken by Couch proceeded through the normal response and appeal process, resulting in denial or Couch's grievance and reliance upon OP 803.2 in denying both books. It appears that Braxton was not part of this process as the initial response was made by the Assistant Warden, Mr. Hollar. There is no other indication of involvement by Braxton.

15. Regional Director Garman testifies in his affidavit, Exhibit IV, that he responded to Couch's grievances on appeal with regard to both claims. In each instance, the response of Assistant Warden Hollar was upheld based upon OP 803.2.

16. Deputy Director Jabe states in his affidavit, Exhibit V, that OP 803.2 provides for the efficient, safe and secure handling and processing of incoming publications for inmates in VDOC facilities. Jabe provided the Level III responses to Couch's grievances and advised Couch that while inmates retain certain First Amendment rights to free access to publications direct from a legitimate source, so long as that source does not pose a threat to the security, discipline, and good order of the facility and are not detrimental to rehabilitation, correctional administrators have equally valid responsibilities to maintain security, discipline, and good order in the prisons. Publications which promote violence, disorder, or the violation of state and federal law and/or any material containing sexually explicit acts, including sexual acts in violation of state or federal law, are prohibited from receipt by offenders. Jabe's review revealed no evidence to substantiate Couch's claim that his First Amendment rights had been violated. Jabe found the substance of OP 803.2 to be appropriate and advised Couch that the procedure would not be modified.

17. Virginia Department of Corrections Director Gene Johnson testifies in his affidavit, Exhibit VI, that OP 803.2 is intended to provide for the efficient, safe, and secure handling and processing of incoming publications for offenders housed in VDOC facilities. Offenders are allowed to receive publications directly from a legitimate source so long as they do not pose a threat to the security, discipline, and good order of the facility or are detrimental to offender rehabilitation. Publications which promote violence, disorder, or material containing sexually explicit acts are prohibited. Sexual explicit material undermines the VDOC's mission, which is public safety. The VDOC mission is to protect the public by controlling offenders who are confined in the prison system and by offering them opportunities to be rehabilitated. Further, sexually explicit material are considered valuable "currency" and used in bartering within the prison setting. The possession of such items may lead to stealing, fights, assaults and other disruptive activities. Further, permitting access to sexually explicit materials undermines rehabilitation efforts, particularly with those offenders who are sex offenders. Additionally, where there is a confined population without normal sexual contact, there is a certain amount of tension and frustration that must be dealt with. Mr. Johnson states that it is the VDOC's belief that constant exposure to sexually explicit material may promote violence among certain offenders who have a predisposition to seeking immediate immediate gratification sexually. Finally, excluding sexually explicit materials is necessary to reduce the sexual harassment of staff and their exposure to a hostile work environment.

18. In Hodges v. Commonwealth, 871 F. Supp. 873 (W.D. Va. 1994), this Court applied the Turner factors to the substantially similar predecessor to the current Operating Procedure, DOP 852, and found that it was reasonably related to a legitimate governmental interest. The Court concluded, "in sum, the magistrate judge found that DOP 852 does not

violate the plaintiffs' First Amendment rights either substantively or as applied" and the Court adopted that part of the Magistrate Judge's Report and Recommendation.[1] Therefore, the established precedent with this Court is that the procedure in question passes constitutional muster, both substantively and as applied.[2]

19. Your Defendants are entitled to the defense of qualified immunity, there being no allegations of conduct which violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982). Specifically, these Defendants simply relied upon OP 803.2 in making decisions concerning the publications in question, a procedure which has previously been found constitutional by this Court. To the extent that Couch seeks damages from any of them, they are immune.

WHEREFORE, for the reasons stated, your Defendants request that their Motion for Summary Judgment be granted and this action dismissed.

Respectfully submitted,

JOHN JABE, DAN BRAXTON, JOHN GARMAN, D. SWISHER & RYDER

By: s/ William W. Muse
William W. Muse, VSB #13599
Senior Assistant Attorney General
Public Safety & Enforcement Division
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 786-0046
(804) 786-4239 (Fax)
E-mail: wmuse@oag.state.va.us

---

[1] The case was thereafter appealed by the publisher on whether its due process was violated by failure to give it notice of the disallowance of its publications. See Montcalm Publishing Corporation v. Beck, 80 F.3d 105 (4th Cir. 1996).

[2] Plaintiff's citing of two cases in support of his position are not binding on this Court. Cline v. Fox, 319 F. Supp. 2d 685 (N.D. W. Va., 2004) was not appealed to the Fourth Circuit and, therefore, has no direct application to the Virginia procedure. Further, Crofton v. Roe, 170 F.3d 957 (9th Cir. 1999) also has no application in this Circuit.

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January, 2010, I electronically filed the foregoing Brief In Support Of Defendants' Motion For Summary Judgment & Response To Plaintiff's Motion For Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: N/A, and I hereby certify that I have mailed by United States Postal Service the documents to the following non-CM/ECF participants: the Plaintiff, William R. Couch, #1128941, Augusta Correctional Center, 1821 Estaline Valley Road, Craigsville, Virginia 24430.

s/ William W. Muse  
William W. Muse, VSB #13599  
Senior Assistant Attorney General  
Public Safety & Enforcement Division  
Office of the Attorney General  
900 East Main Street  
Richmond, Virginia 23219  
(804) 786-0046  
(804) 786-4239 (Fax)  
E-mail: wmuse@oag.state.va.us